MANUEL GARCÍA REYES, Plaintiff and Appellant, v. SOCIE-
DAD MARIO MERCADO E HIJOS ET AL., Defendants and
Appellees.

No. R-62-296.     Decided December 11, 1964.

*Rafael Hernández Colón* for appellant. *Pedro M. Porrata* and
*Charles R. Cuprill* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

In the latter part of the past century, and in order to facilitate the construction of the railroad line around the Island, Dimas de Ramery ceded gratuitously to the railway enterprise a parcel of land segregated from a property having a larger area known as "Ojo del Agua" which he owned in the ward of Canas of the Municipal District of Ponce. The bed of the track was laid out on the ceded parcel. The parcel was not recorded in the Registry of Property. In 1906 the heirs of Ramery sold the remainder of the main property to José Trujillo and Mario Mercado. In 1950 the railroad company filed a dominion title proceeding over the parcel ceded by Ramery. An order was entered in 1953. After the railway went out of business the lands of the operating company were acquired by a corporation known as Puerto Rico Railroad Land & Development Co., Inc. The parcel ceded by Ramery was recorded in the Registry of Property, pursuant to the order entered in the dominion title proceeding, with the following description:

"RURAL: Parcel of land situated in the ward of Cuchara of the Municipal District of Ponce, having an area of FIFTEEN THOUSAND FOUR HUNDRED EIGHTY–ONE (15,481) square meters and lying between kilometer 266.868 and kilometer 268.836 of the general railroad line extending from San Juan to Ponce. It is bounded on the north by insular highway number thirty-six; *on the south by the maritime zone* and lands of the Land Authority; and on the east and west by the parcellary of the track of the Compañía de los Ferrocarriles de Puerto Rico." (Italics ours.)

The Puerto Rico Railroad Land & Development Company, Inc., sold the parcel to Manuel García Reyes for the sum of $1,548.10. In an agreement made prior to the formal

execution of the deed of sale the parties agreed "to make forthwith a survey of the said PROPERTY in order to determine its correct area, it being stipulated that the selling price hereinabove set forth shall be increased or decreased in order to conform it to the price of $0.10 per square meter of land sold. Any additional amount necessary to complete the adjusted price of the sale as a result of such survey shall forthwith be paid by the VENDEE to the VENDOR, which in turn agrees to refund to the VENDEE any amount received in excess of such adjusted price. The VENDEE has deposited with the VENDOR the sum of $75 as its proportional part of the expenses of the survey herein agreed upon." The survey was not made.

The purpose of García Reyes in acquiring the said parcel was to subdivide the same for the sale of lots to several persons who had built on the lands to the south of the railway during the past years before it went out of business. In the midst of these activities García Reyes received a letter from one of the attorneys for Sociedad Mario Mercado e Hijos informing him "that the parcel lying to the south of the railroad track where the house of Lolita Berio and Valentina Monforte is situated forms part of Hacienda Ojo del Agua, which was acquired by the Mercado family in 1906." The said partnership advised several persons who owned houses on the parcel that García Reyes was not the owner of the land.

In view of these circumstances, García Reyes filed a claim for damages against Mario Mercado e Hijos. He alleged that the action of defendant entity had handicapped the business of the parcel recently acquired and that his reputation had been affected. He alleged in the complaint "that the Sociedad Mario Mercado e Hijos and/or Mario Mercado Riera, without legal justification therefor, made known, through their authorized agents, to the persons who were contracting with Manuel García Reyes and the public

in general that the parcel above described did not belong to García Reyes."

In the answer to the complaint the partnership "admits that the P.R. Railroad Land & Development Company, Inc., sold to plaintiff the parcel described in the first paragraph of the complaint, but it denies that the same is bounded on the south by lands of the maritime zone, and it is expressly alleged that the strip of land referred to in the deed of sale is restricted to the servitude of right of way which the old railroad company of Puerto Rico had over the lands of Hacienda 'Ojo del Agua' which prior thereto belonged to the Ramery family and since 1906 to Sociedad Mario Mercado e Hijos, and does not vest any title in plaintiff over the remainder of the land lying between such servitude and the sea." In other words, it alleged as a defense plaintiff's lack of title to that part of the parcel lying between the so-called "servitude of right of way" and the maritime zone.

The court dismissed the action of damages on the ground, among other things, that "defendant Mario Mercado e Hijos is the owner and is in possession, as always were its predecessors in title, of the lands to the south of the strip acquired by plaintiff. Since plaintiff purchased per unit of measure, he has title only to 15,481 square meters of land lying between Km. 266.838 and 268.836 of the general railway line extending from San Juan to Ponce." In other words, the court actually adjudicated the title to certain lands to the partnership Mario Mercado e Hijos. Plaintiff has not discussed in the petition for review the dismissal of the claim for damages,[1] and has merely raised the question of title because of the importance of such adjudication."

---

[1] In dismissing the action the judge made the following conclusion of law:

"Malice is an essential element of an action for damages for slander of title, and the claim cannot prosper where as in this case there is complete absence of evidence on that point. 'Malice as element of action for slander of title,' Annotation, 129 A.L.R. 179. See, also, 39 A.L.R.2d 846."

■ Thus, the action exercised by García Reyes has become, for all practical purposes, one for declaratory judgment to determine the title to certain lands. It is so admitted by defendant Mario Mercado e Hijos in its brief before this Court in asserting that "in any event, this Honorable Court will have no doubt that in this case a controversy on titles was posed before the trial court." As we pointed out, that was the basic determination of the trial court. The evidence presented by the parties was aimed mostly at establishing their title to the parcel of land lying between the so-called "servitude of right of way" and the maritime zone. However, since the defense was interposed by the defendant, the burden of proof rests on it to establish its title and to challenge the order entered in the dominion title proceeding.

The evidence establishes that García Reyes acquired the parcel above described for the purpose of subdividing it and selling the lots to those persons whose houses were standing thereon. In the instrument of conveyance of title the parcel was described as having an area of 15,481 square meters, but a subsequent survey showed, as stated by witness Carlos Clavell, that the correct area was approximately 20,000 square meters, a difference of 4,519 square meters. Defendant's position is in the sense that the excess area, whether 4,519 square meters or over that amount, belongs to it.

Let us analyze the evidence presented. Plaintiff offered the deed of sale duly recorded. He acquired thereby a parcel with specified limits and boundaries and having an area of 15,481 square meters, for the price of $0.10 per metric unit. The parcel belonged to the railroad company. An employee of that enterprise testified that he knew the real property since 1929. He said that the company had always been in possession of the land lying between the track and

the sea; that it had never been fenced between the track and the sea. He referred to the blueprint of the railroad track which plaintiff presented in evidence, and asserted that it appeared therefrom that the width of the parcel ceded was unlimited. The court having made an inspection,[2] it is interesting to note that the witness says that when he was working for the railroad "there was less land; the part of the land was narrower." It seems that the sea had receded thereby increasing the area of the parcel, according to this witness' assertion.

Plaintiff also presented evidence to show that Mario Mercado e Hijos filed unlawful detainer proceedings against those persons who owned houses on the land to the south of the track.[3]

The partnership sought to establish its title with the following elements of proof: (1) the fact that it authorized different persons to build houses on the lands in litigation; (2) the payment of property taxes on the parcel in question; (3) the testimony of its administrator to the effect that the partnership had been in possession of the lands from time immemorial; (4) the deed of purchase of the Ojo del Agua property in which the ocean appears to be the southern boundary; (5) the order of the Bankruptcy Court refusing to guarantee the possession of the parcel to plaintiff's predecessor in title.

According to its opinion, evidently the first consideration taken into account by the trial court to rule that "Mario Mercado e Hijos is the owner and is in possession, as always were its predecessors in title, of the lands lying to the south of the strip acquired by plaintiff," was the conclusion of

---

[2] Apparently no minutes of the inspection were made. See *Emanuelli* v. *Emanuelli*, 87 P.R.R. 359 (1963).

[3] The purpose of that evidence was to support plaintiff's allegation to the effect that "the defendant . . . has maliciously filed unlawful detainer proceedings against certain persons who wrongfully occupy plaintiff's property."

law that "since plaintiff purchased per unit of measure, he has title only to 15,481 square meters of land lying between Km. 266.838 and 268.836 of the general railway extending from San Juan to Ponce." The other factors considered by the Judge in making his determination were the following:

(a) The fact that "for many years Blas Oliveras, Aníbal Nieves, Eloy Bosch Sabater, Valentina Monforte, Lolita Berio, and Antonio Rullán; have constructed houses, with the authorization of Mario Mercado e Hijos, on that parcel to the south of the strip of land acquired by plaintiff."

(b) The circumstance, according to the court, that "In the Treasury Department of Puerto Rico the lands to the south of the track appear in the name of Mario Mercado, who pays property taxes thereon. The Puerto Rico Railroad and Transport Company did not pay taxes; the remainder of the property did (see testimony of Carlos Archeval)."

(c) The fact that when the Mercado family acquired the Ojo del Agua property in 1906, the real property was described in the deed of sale as follows:

"FARM situated in the ward of 'Canas,' Municipal District of Ponce, at the place known as 'Ojo del Agua', having an approximate area of five hundred cuerdas, equivalent to one hundred ninety-six hectares, fifty-one ares and ninety-eight centiares, containing two palm-thatched houses and a well with its curbstone. It is bounded on the south by the ocean, and in the other direction, formerly, by José del Toro Gandía, at present, by Trujillo & Mercado, Valdivieso Hermanos, and Ramón Cortada. It is recorded at folio 135, volume 15 of Ponce."

(d) The fact that "On July 1, 1958, José M. Feliciano, Trustee in Bankruptcy of Puerto Rico Railroad and Transport Company, appeared before the United States District Court for the District of Puerto Rico in bankruptcy case 2077 seeking an order against Blas Oliveras, Jr., Valentina Monforte, María Mercado, and Charles R. Cuprill to sur-

render the possession of the land object of the agreement of sale between plaintiff and P.R. Railroad Land and Development Co., Inc., and his petition was denied by order of August 19, 1958, on the ground that there was evidence that the persons mentioned held the possession prior to the bankruptcy proceeding."

Let us consider first the trial court's criterion to the effect that, since plaintiff had purchased the parcel by unit of measure, he has title only to the number of meters specifically mentioned in the contract.

■ Apart from the fact that the parties were aware that the number of square meters set forth in the contract as representing the area of the real property object of the transaction was subject to rectification, as it appears from the clause copied above whereby it was agreed to survey the property, the truth is that the Civil Code expressly provides in § 1359, 31 L.P.R.A § 3819, that "If in the case of the preceding section there is greater area or number in real estate than those mentioned in the contract, the vendee shall be obliged to pay the price of the excess if the greater area or number should not exceed one-twentieth of those mentioned in the contract; but should it surpass said one-twentieth, the vendee may choose between paying the greater value of the estate or withdrawing from the contract." The law therefore recognizes to the vendee the title over the resulting excess area, but it provides that the vendor may claim the value of the excess provided it does not exceed the Code limit. And the vendee is granted the prerogative of withdrawing from the contract if the excess area exceeds the statutory limit. 10 Manresa, *Código Civil Español* 177–78 (1950 ed.), in his comments on § 1470 of the Spanish Civil Code, counterpart of our section; 23 Scaevola, *Código Civil* 498 (1906 ed.). In any event, the circumstance of the existence of an excess area does not benefit Mario Mercado e Hijos at all. The only person who shall have a cause of

action—for the purpose of claiming the price of the excess —would be the Puerto Rico Railroad and Transport Company.

When the Mercado family acquired the Ojo del Agua property in 1906, the southern boundary set forth was the ocean. It thus appears in the Registry of Property. But this is easily explained if we take into account that the parcel segregated and ceded to the railroad enterprise had not been recorded. The establishment of any servitude was not set forth either. If the parcel ceded by Ramery in 1891 actually extended as far as the ocean, the fact that the remainder of the property appeared in the Registry in 1906 as being contiguous to the ocean is not a controlling factor.

■ The trial court points out that the Mercado partnership paid taxes on the lands to the south of the strip purchased by plaintiff. Without considering whether the payment of taxes to the public treasury on a parcel of land is a factor to be taken into account in establishing title, the fact is that from an analysis of the testimony of witness Archeval it does not appear that Mario Mercado e Hijos paid taxes on the lands to the south of the parcel purchased by plaintiff. Archeval's testimony was to the effect that "when we received assessment orders to assess the property on all that land, we had to set apart the parcellary of the railway in order to . . . because the parcellary of the railway did not pay taxes because it belonged to Puerto Rico Transport which was tax exempt by law. It was then necessary to set apart that strip in order that the remainder of the property would be taxable." After setting forth the foregoing, the witness further testified:

"DEFENDANTS:

Mr. Archeval, under . . . according to your investigation and knowledge, what was the width of the strip of land?

Well, I do not recall exactly the width of that strip of land, but I presume that it has a width of 7 to 8 meters.

Of 7 to 8 meters?

Yes, sir. More or less.

Was that the strip of land, the parcellary of the railway?

That we set it apart from the other lands.

Do you know whether to the south of the parcel, of the track—according to your investigation—there is something there in that place?

WITNESS:

Well, in that place there is an irregular strip of land which is wider at some places and narrower at others.

DEFENDANTS:

Tell me, Mr. Archeval, who is the person who pays the taxes on that strip of land which appears to the south of the parcellary?

The strip of land situated on the south of the parcellary of the track appears in the name of Mario Mercado and he is the one who pays the property taxes.

Is there any identification of that in the records of your department?

For the purposes of identification . . .

Does that form part of a property?

It forms part of Hacienda Matilde.

THE COURT:

Hacienda what?

WITNESS:

Matilde."

The witness referred to Hacienda Matilde. The parcel in litigation was part of Ojo del Agua property, and from the record it appears that they are two different properties. (Testimony of the administrator of Mario Mercado e Hijos at p. 47 of the Tr. of Ev., piece III.)

The fact that the Mercado partnership granted authorization to a number of persons to construct houses on the lands in litigation is not important in determining title, since it appears from defendant's evidence that such authorization was granted in 1954 and this action was brought in 1960.

The order of the Bankruptcy Court is not important. It merely said that the P.R. Transport may not eject the unlawful occupants of the parcel because the source of their possession is prior to the bankruptcy proceeding.

■ The fact that unlawful detainer proceedings were brought is irrelevant in establishing title. What is more, plaintiff himself was the one who presented that evidence to show the nuisance to which he was subjected by the Mercado partnership. See *Khon* v. *Martínez*, 40 P.R.R. 37 (1929).

It remains for us to consider next the testimony of the administrator of defendant partnership in order to be able to determine whether the same is sufficient to challenge the order entered in the dominion title proceeding and to establish the title of Mario Mercado e Hijos to the lands in litigation. On direct examination the administrator testified that Mario Mercado e Hijos has been in possession of the land in litigation from time immemorial. On cross-examination he testified that the partnership which he represents is the owner of 11,738.73 cuerdas; that he knows all the properties; that he has visited all of them; that the overseer of Ojo del Agua property, Ramón Rodríguez, or perhaps Atanasio Mercado, he does not recall correctly, informed him for the first time in 1948 that the parcel in litigation to the south of the railway belonged to the Mercado partnership; that in 1954 the partnership authorized several persons to construct houses on the land.[4] When he was asked what acts of dominion over the lands in litigation had been performed by the partnership which he represents, specifically, prior to 1954, he said in answer to the following question:

"Q. Shall I take it to mean that prior to 1954 you did not fence it, nor cultivated it, nor weeded it, nor exercised any act?
A. We watched over it."

---

[4] In the latter part of 1954 the railroad company filed a petition for voluntary bankruptcy before the United States District Court.

And in explaining why he merely watched over, he said:

"Yes, sir, because the land is barren. If any poles were needed on any occasion, they were cut there, or they were brought from the woodland. Those lands were a very conspicuous part, but afterwards, in 1937, a road was built there, there was no road there, that there was a mountain and the railroad went across it. Formerly it was No. 36."

When asked whether after the road was built he merely watched over the parcel, he answered:

"I would have to refresh my memory. Broom straw and poles were obtained some times, they were obtained from the adjacent mountains, but going uphill. On that I can assure that poles for sheds and small houses were obtained from the Matilde."

The foregoing, we have said, referred to the period prior to 1954 when the houses were first constructed on the parcel. When he was asked on acts of dominion exercised by the Mercado partnership subsequent to 1954, he said:

"I should have asserted act of dominion. The attorneys recommended it repeatedly because the people had nonetheless occupied those lands. On one occasion, by deed of sale we gave to Serafín Feliciano written consent to build the house which he had there, which he has at present . . . it belongs to Valentina Monforte."

■ Summing up, the evidence presented to warrant the title of Sociedad Mario Mercado e Hijos and to challenge the order entered in the dominion title proceeding establishes that the administrator of the partnership learned, through information furnished him in 1948 by the overseer of that property, that the lands in litigation were part of the Ojo del Agua property. Prior to 1954 the only act of dominion performed by the partnership was to watch over the land, and subsequent to 1954, when authorization was granted to construct certain houses on the parcel of land, they did not

perform acts of dominion. "I should have asserted act of dominion," said the witness in his testimony.

Clearly this evidence is not sufficient to adjudicate to Mario Mercado e Hijos the title to the lands. The order entered in the dominion title proceeding cannot thereby be challenged.[5]

When Dimas de Ramery ceded in 1891 to the railroad enterprise a parcel of land to lay out the track, evidently that parcel was worth little. It was 2,000 meters long and consisted of lands which, as asserted at the trial almost 70 years later by the administrator of Mario Mercado e Hijos, "are completely barren." At the time it was ceded the construction of the railway redounded to the benefit of the remainder of the property. It is reasonable to conclude that the cession included the lands as far as the ocean. They were worth little, the area was small as to its depth,[6] and it would have been very costly to fence them. It cannot be conceived that at that time Ramery had any interest in retaining lands which were worthless, completely separated by the railroad track from the remainder of the property, and that the cost of fencing and administration would have been greater than the value thereof.

In view of the foregoing, that part of the judgment which dismissed the claim for damages will be affirmed, but the same will be modified in the sense of declaring that plaintiff Manuel García Reyes is the owner in fee simple of all the

---

[5] The defendant did not present evidence either to describe and identify the land claimed. The evidence established that the parcel is irregular in shape; "as to the shoreline, it is completely irregular," there are places where it comes near the track and there are places where it is farther. A proper description is indispensable for execution of the judgment if defendant's contention is to prevail. *Cf. Sevilla v. Cía. Azucarera del Toa,* 69 P.R.R. 231 (1948). When defendant presented certain blueprints in evidence, plaintiff objected on the ground that he had not had an opportunity to cross-examine the person who drafted them.

[6] We have seen that a witness asserted in the course of the inspection that there was more land at that time. Evidently during 70 years the ocean necessarily affected the area.

lands comprised within the boundaries of the parcel described in the order entered in the dominion title proceeding and which is recorded in the Registry of Property. The award of fees is eliminated.